Case No. 1:15-cv-01273-PLM-RSK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVID W. CHARRON,

      Appellant/Defendant

Bankruptcy Adversary Proceeding No.
15-80086

v
GLENN S. MORRIS and THE
GLENN S. MORRIS TRUST

      Appellants/Plaintiff

Hon. Paul L. Maloney
Lower Case No: BG 14-07970

Nature of Suit: 422 Bankruptcy Appeal

_____/

| | |
|---|---|
| Eric D. Carlson (P60277) | Perry G. Pastula ( P35588) |
| Ronald J. Spinner (P73198) | Dunn Schouten & Snoap, PC |
| Stanley J. Stek (P29332) | Attorneys for Appellant David W. Charron |
| Miller Canfield Paddock and Stone PLC | 2745 DeHoop Ave., SW |
| Attorneys for Appellees Glenn S. Morris | Wyoming, MI 49509 |
| and The Glenn S Morris Trust | (616) 538-6380 |
| 150 West Jefferson, Suite 2500 | bankruptcy@dunnsslaw.com |
| Detroit, MI   48226-4415 | |
| (313) 496-7829 | Daniel M. LaVille |
| carlson@millercanfield.com | U.S. Bankruptcy Court |
| spinner@millercanfield.com | One Division Ave. N Room 200 |
| stek@millercanfield.com | Grand Rapids, MI 49503-3132 |
| | (616) 456-2693 |
| _____/ | bkappeals@miwb.uscourts.gov |

**APPELLANT'S REPLY BRIEF**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

REPLY TO COUNTER STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REBUTTAL OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ADDENDUM CONCERNING STATUTES AND RULES. . . . . . . . . . . . . . . . . . . . . . . . . . .  A

# TABLE OF AUTHORITIES

*Cases*

*Davis v. Detroit Financial Review Board*
      296 Mich. App. 568, 821 N.W.2d 896 (2012).. . . . . . . . . . . . . . . . . . . .  6, 9

*Grogan v. Garner*
      498 U.S. 279, 111 S. Ct. 654 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*In re Bradley Estate,*
      494 Mich. 367,  835 NW 2d 545 (2013). . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Walker v. Henderson (In re Contempt of United Stationers Supply Co.)*
      239 Mich. App. 496, 608 N.W.2d. 105 (2000). . . . . . . . . . . . . . . . . . . . . 10

*In re Markowitz*
      190 F.3d. 455 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*In re Nicodemus*
      497 B.R. 852  (B.A.P.  6th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kawaauhau v. Geiger*
      523 U.S. 57, 118 S.Ct. 974 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Musilli v. Droomers* (*In re Musilli*)
      379 Fed.. Appx.. 494 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

*Federal Statutes*

11 U.S.C. § 523(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C. § 523(a)(6).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-5, 8-11

11 U.S.C. § 523(a)(7).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

***Michigan Statutes***

MCL 600.1721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 7

***Federal Rules of Civil Procedure***

Fed. R. Civ. P. 65(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

L. Civ. R. 83.2(a) (W.D. Mich). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

***Michigan Court Rules***

MCR 3.310©... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

***Other***

Restatement (Second) of Torts § 8A (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iii

<u>REPLY TO COUNTER STATEMENT OF FACTS</u>

Morris continues his efforts to re-write the contempt award to make it something it is not. The award does not represent compensatory damages to Morris for some type of injury he suffered.[1] Morris unsuccessfully sued Charron in the 2009 action for injuries associated with a variety of intentional torts.   All of the claims were premised upon Charron's participation in his law firm's sale of the assets of Morris, Schnoor & Gremel, Inc. ("MSG").   Charron was unequivocally and irrevocably adjudicated to be not responsible for any injury to Morris.   Morris continues to ignore the dismissal of his claims against Charron in the 2009 action, as well as the fact that the dismissal was issued by the same state trial court judge and affirmed by the same Court of Appeals panel which adjudicated the contempt award presently before this court.   Morris fails to explain what "injury" survived the dismissal of the 2009 action to serve as the basis for an 11 U.S.C. §523(a)(6) non-dischargeability claim in this action.

This case involves an award of attorneys fees and costs arising from a contempt action involving the same sale of MSG assets.   The state courts said the contempt award against Charron does not represent compensation for injury Charron caused to Morris.    Rather, it represented a sanction for Charron's interference with the functioning of the court.   Morris ignores that the state courts attributed fault for the asset sale exclusively to Charron's former law firm, Charron & Hanisch, PLC ("C&H") and to an insurance agency at the center of the dispute, Morris, Schnoor & Gremel, Inc. ("MSG").   The state courts awarded indemnification damages to Morris against these other parties, but not Charron, pursuant to MCL §600.1721.

_____

[1]Michigan courts refer such losses as "indemnification damages" which arise under MCL §600.1721.   The trial court awarded indemnification damages against parties other than Charron in this case, and it contrasted Charron's treatment from such parties.

-1-

The reasoning of the state courts is not "complicated", as alleged by Morris.   The state courts did not require a tort or injury caused by Charron as a condition for sanctioning Charron with fees and costs.   No malice or wilful behavior by Charron was needed either.   The state courts awarded Morris fees and costs because he brought Charron's incident of contempt to their attention and they were appreciative.   This modest and unexceptional reason for the award does not qualify for an exception to dischargeability under §523(a)(6).   The debt does not result from a wilful or malicious injury to Morris or his property.

Most importantly, Morris qualified for the award in the absence of any showing he was injured by Charron.  The state courts never determined that Charron acted maliciously to cause harm to Morris because they never determined Charron injured him in the first place.  Malice was not an actual or necessary determination for their award of fees and costs.

The statement on page 5 of Appellee Morris' brief that Charron knew "any transfer of MSG's assets" would violate the restraining order is inaccurate.  Charron knew that a transfer of the assets of MSG by Schnoor would violate the restraining order.  Schnoor was the only party restrained by name in the order.   As discussed extensively in the Appellant's initial brief on appeal, Charron and his law firm counseled Schnoor not to violate the injunction.  Charron invited Morris to bring a show cause hearing to determine whether the restraining order had been violated after the Article 9 sale occurred.

The trial court's opinion includes an unnecessary statement that Charron intended to disobey the restraining order.  Morris and the Bankruptcy Court's opinion both omit that Charron appealed the erroneous foundation for the statements to the Michigan Court of Appeals ("COA") and he was advised that the "infirmity" in the order was "irrelevant" to the trial court's contempt finding:

"<u>Charron's subjective view of his behavior is irrelevant</u> because, "a finding of willful

-2-

disobedience of a court order is not necessary for a finding of civil contempt.'"" (*Id*.
p. 9) (Emphasis added).

In other words, it was immaterial to the outcome of the decision whether Charron followed an

erroneous legal opinion about who was bound by the injunction as he alleged [2], or he knowingly

violated the order.  Both avenues could lead to contempt and it was not worth the time of the COA

to correct harmless errors.

Contrary to Morris' intimations, Charron never denied that C&H had transferred the assets

of MSG.  As demonstrated by the February 9, 2009 hearing held within months of the sale, Charron

testified extensively about the Article 9 sale and the law firm's motivations for conducting the sale.

No one said the law firm or Charron had  violated the Schnoor restraining order or should be held

in contempt at the hearing.   Unfortunately for Charron, the trial court's recollection of this event

dimmed and its views changed four years later, resulting in the current contempt award.

## REBUTTAL OF ARGUMENT

Our society places courts in the unique position of being able to prevent harm before injury

arises.  Injunctive relief is their primary tool.  Upon the application of a party, a court has the power

to identify potentially harmful conduct of another party and restrain it.  Federal courts are governed

by F.R.C.P. 65(d);  Michigan state courts are governed by MCR 3.310(C).   Judges are supposed

to apply time tested, well known rules to the facts of a case to determine whether a restraint should

issue.   The rules balance the interests of a restrained party against those who are potentially

benefitted by a restraint, including society at large.  These rules also facilitate appellate review of

---

[2]Charron believed that as long as his law firm acted as the principal pursuant to its valid,
pre-existing, security interest with MSG, rather than as an agent for Schnoor, the law firm would
not be affected by the injunction which only restrained Schnoor from transferring the assets of
MSG.

decisions which, due to their nature, are often hastily made to maximize their benefit.

When a restraint is not obeyed, claims may arise.  If the claims are not promptly paid, they may result in debts which need to be administered in bankruptcy court, such as the present case. Congress did not exempt from discharge debts that are labeled as "contempt sanctions" nor debts which arise from the exercise of a court's power of contempt.  When the exercise of a contempt power results in an award payable to the court or another governmental authority, §523(a)(7) exempts the debt from discharge as long as the debt does not represent compensation for actual pecuniary loss.  All other debts arising from contempt sanctions must rely upon other subparts of §523(a) to become non-dischargeable.  Hence, an examination of the debtor's conduct in relation to an exemption,  rather than any labeling of the debt as a "contempt sanction", is the relevant inquiry of a non-dischargeability claim.   A creditor like Morris has the burden to show by a preponderance of the evidence that his  non-dischargeability claim fits squarely within an exception to discharge. *Grogan v. Garner*, 498 U.S. 279, 287; 111 S. Ct. 654 (1991). Exceptions to discharge under §523(a) are narrowly construed in favor of debtors in order to promote the Bankruptcy Code's policy of providing debtors with a fresh start. *In re Nicodemus*, 497 B. R. 852, 857-858  (B.A.P. 6th Cir. 2013).

Bankruptcy courts are charged with the responsibility of making determinations of dischargeability.[3]  Since no blanket exemption to discharge exists for debts arising in the context of a contempt action, this task can be tedious work.   A Bankruptcy Court must examine not only the conduct of the debtor, and the conclusions of the trial court, but the legal authorities cited by the courts issuing and affirming the award to determine whether the debt represents a claim

---

[3]L. Civ. R. 83.2(a) (W.D. Mich)

-4-

contemplated by §523(a). This case involves a creditor Morris' assertion that §523(a)(6) is applicable to deny Charron a discharge.

In order to except a debt from discharge under §523(a)(6), a creditor must satisfy the court that the debtor's actions were: (1) willful, (2) malicious and (3) resulted in injury to another entity or the property of another entity. *Kawaauhau v. Geiger*, 523 U.S. 57, 61; 118 S.Ct. 974 (1998). The Supreme Court has adopted the reasoning of the Eighth Circuit that "the (a)(6) formulation triggers in the lawyer's mind the category of "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment *a*, p. 15 (1964)." Accordingly, "unless the actor desires to cause the consequences of his act, or ....believes that the consequences are substantially certain to result from it, he has not committed a willful and malicious injury as defined under §523(a)(6)." *In re Markowitz*, 190 F.3d. 455, 464 (6th Cir. 1999).

All contempt awards have the purpose of preserving the effectiveness, power, and dignity of the courts. Some contempt awards have an additional purpose of compensating parties for actual injury or losses they sustain as result of the contemptuous act. In Michigan, this additional purpose is effectuated by MCL 600.1721, a statute which authorizes courts to indemnify parties who suffer an "actual loss or injury caused by a contemnor's misconduct." The Michigan Supreme Court characterized MCL §600.1721 as seeking to impose "tort liability" because "it contains all of the elements of a tort claim in the guise of a contempt claim".[4] *In re Bradley Estate*, 494 Mich 367,

---

[4]"The first sentence of MCL §600.1721... requires that this misconduct "cause [ ]"the petitioner's actual loss or injury," thus paralleling the other two elements recognized in a traditional tort claim; causation and damages." Because the first sentence of MCL §600.1721 authorizes a court to order a contemnor to "indemnify" the petition for the loss caused by the contemptuous misconduct, the statute clearly sanctions legal responsibility, or liability, in the form of compensatory damages." *In re Bradley Estate* at 390-395.

394-395; 835 N.W.2d. 545 (2013).   The Michigan legislature has provided that a recovery under this statute bars a later recovery for the same injury or loss.

The contempt awards against two other contemnees, C&H and MSG, were rendered under MCL 600.1721 and serve the purpose of compensating Morris for injuries he suffered.   Morris says the debt in the current action also serves the same purpose. The state courts said otherwise, based upon two cases:   *Davis v City of Detroit Financial Review Team*, 296 Mich App 568; 821 NW2d 896 (2012), and *In re Bradley Estate*.   The state courts said Morris was not compensated for injury by Charron.   Despite repeated requests by Charron to carefully review the holdings in these cases relied upon by the state courts for their holdings, it is not evident the Bankruptcy Court analyzed either of the cases when determining whether Charron's debt to Morris was dischargeable.

The two cases support the COA's conclusion that the contempt award against Charron represents an exercise of the inherent right of the judiciary to address contemptuous behavior under the Michigan Constitution, rather than by a tort award arising under MCL 600.1721.  The limitations on the exercise of the court's "inherent power" are found in *In re Bradley Estate.*   Due to its unique Constitutional origin, a contempt award arising from the inherent power of the court never represents compensation to a creditor for injury arising from the contemptuous act.   494 Mich at 394-395   No tortuous or malicious conduct is required by the contemnor for the sanction to be imposed. The compensation is a response to disruptions caused to the functioning of the court, not harm to the contemnee.   Violation of a court order and the reporting of the violation of the order to the court are all that is required to qualify for an award.

The Bankruptcy Court erred when it extrapolated an unnecessary comment the trial court made relative to Charron's intent to violate the injunction into a full blown charge on §523(a)(6). Charron's subjective intentions with respect to the injunction were irrelevant due to the nature of

the contempt involved under *Davis* or *In re Bradley.*

The Bankruptcy Court's reasoning may have had more validity if a contempt award arising under MCL 600.1721 was involved.   It stands to reason that when conduct commensurate with an intentional tort is restrained, and the restraint is violated by a contemnor's misconduct ----- resulting in an "actual loss or injury" to the party benefitted by the restraint ------ a contempt award for indemnification damages under MCL 600.1721 may arise.   When it does, it is likely to be non-dischargeable under §523(a)(6), absent extenuating circumstances.  (This would be the same result which occurs from a successful trial involving the same loss or injury). The advantage to a creditor of pursuing such a claim in the context of a contempt action is that "malice" may be presumed for purposes of §523(a)(6) if the contemnor knowingly violated the restraint.   In the case of *Musilli v. Droomers* (*In re Musilli*), 2010 WL 2222806 (6th Cir 2010), the Sixth Circuit used this presumption to shift the evidentiary burden to the contemnors to prove why their actions were not malicious. It noted prominently that the debtors offered "no justification" for their behavior.   The reason for the presumption and partial shifting of the creditor's burden of proof under *Grogan* is that trial court has already done the hard work of identifying and restraining conduct which it deems likely to cause harm.   In *Musilli*, it warned the contemnors with clear instructions not to undertake the action except at their peril.   The problem with the Bankruptcy Court's reasoning is that this is not a MCL §600.1721 case.   There is no need to presume "malice" in the absence of "injury".   The absence of "injury" is fatal to a §523(a)(6) claim.

The Bankruptcy Court erred by failing to give any significance to the fact that Charron was previously adjudicated not to be responsible for any injury to Morris arising from the sale of MSG assets.   The sale of MSG assets was at the heart of the contempt action.  Following the dismissal of the 2009 action, there was no injury to serve as the basis for indemnification damages under MCL

600.1721.  Moreover, the state courts said the contempt award did not represent compensation for injury to Morris.  §523(a)(6) requires the debt to result from injury to the creditor or his property. No claim is sustainable under §523(a) in the absence of injury to the creditor, such as the present case.

The other problem with the Bankruptcy Court's reasoning is that Charron was not a party to the restraining order, thus rendering the authority relied upon by the Bankruptcy Court inapplicable to him.  In many respects, Charron's situation is almost the opposite "Musilli" case. In *Musilli*, the order restraining disposition of asset was issued directly against the law firm in which the debtors were partners, during a fee dispute with a referral party. There was no doubt the restraining order applied to the law firm or its partners: the debtors received "clear instructions" regarding what they were supposed to do with the money they received and why the failure to do so would cause harm to a party who was litigating the referral fee.  The clarity of the situation left the debtors with no justification for their behavior when it was later discovered they had distributed the money, rather than escrowed it.

Unlike the parties in *Musilli*, Charron's anticipated conduct was not the reason the injunction issued in the first place.  He had no notice the injunction applied to him or his law firm, nor any opportunity to present defenses as to why the injunction should not apply to either himself or his law firm, a junior secured creditor, or MSG, the party who gave his law firm a lien to secure its debt months prior to the restraining order. The hearing exclusively involving a restraining order against Schnoor ---- someone who owed Morris money, less any setoffs.  Neither Charron, nor his law firm, nor MSG, the party who owed the debt to C&H owed Morris money or were named as restrained parties.  They did not enjoy rights under F.R.C.P. 65(d) or any comparable court rule.  There was nothing in the record of the hearing which would put any of them on notice that the restraining order

-8-

applied to their business dealings with each other.   MSG and C&H's debtor/creditor relationship arose more than a year prior to the restraining order and its C&H's lien against MSG's assets was perfected three months before the injunction.  Morris was not a shareholder or creditor of MSG and he held no interest in the assets of MSG.   No instructions, let alone "clear instructions" were given to Charron, C&H or MSG regarding the scope of their permissible behavior at the hearing or at any other time.   The trial court did not give any reasons for the injunction in the order or in the record of the proceeding, as required by MCR 3.310(C).[5]  It ignored the only basis for the restraining order in the first place, a stipulation by Schnoor and Morris that the restraint only last a week or two while the unsuccessful contempt hearing against Schnoor proceeded.   No matter how talented Charron may have been as an attorney, he was not a mind reader.   The fact that the trial court said nothing about the propriety of the injunction at the February 9, 2009 hearing-----conducted immediately after the asset sale------speaks volumes about how the court and the parties viewed the scope of the restraint in relation to the sale.

Finally, even when it is applicable to infer "malice" from intentional violations of a court order, *Musilli* merely creates a rebutable presumption of "malice".  The *Musilli* debtors did not provide any justification for their behavior.   In his reply to Morris' motion for summary judgment

---

[5]MCR. 3.310(C)requires that "[a]n injunction or restraining order: (1) **must set forth the reasons for its issuance**."  This reasoning must include rulings upon the four well known factors enumerated in  *Mich. State Employees Ass'n v. Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984); *Pontiac Fire Fighters Union Local 276 v City of Pontiac*, 482 Mich 1, 10-11; 753 NW2d 595 (2008); *Davis v City of Detroit Financial Review Team*; and *Alliance for the Mentally Ill of Mich v Dep't of Community Health*, 231 Mich App 647, 600-661; 588 NW2d 133 (1998).  They include: (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is not issued.

-9-

Charron presented significant justifications for his behavior.   Not only did the proffered evidence negate "malice", it substantiated the more likely premise that the contempt award was based upon mere negligence.  A contempt award may arise from a negligent or reckless violation of a restraint. *Walker v. Henderson (In re Contempt of United Stationers Supply Co.),* 239 Mich. App. 496, 608 N.W.2d. 105 (2000).  Debts arising from less than intentional behavior  do not qualify for non-dischargeability treatment under §523(a)(6), due to the high standard set by Congress and *Geiger* for this exception.    For a debt to be non-dischargeable under Section 523(a)(6), it must not only compensate for injury caused to the creditor or his property, but the injury must result from the debtor's wilful and malicious conduct which targets the creditor for harm.  This conduct is missing in this case.

The position on page 14 in section 3 of Morris' brief that any liability arising from prohibited conduct is nondischargeable under 523(a)(6) is contrary to the express language in the statute.  The statute specifically requires a finding that the debt be for willful and malicious injury by the debtor to another entity or to the property of another entity.   The statute does not state that all debts resulting from willful and malicious acts by the debtor are nondischargeable, as suggested by Morris.  It requires that the creditor prove that there was injury to another entity or the property of another entity.   The state court has already determined that Charron is not liable to Morris for any injury.

Morris' argument under Section B concerning the application of collateral estoppel to nondischargeability actions is also wrong as to the determination of malice.   At the very least Charron has raised genuine issues of fact and should have his day in the bankruptcy court to defend himself on the issue of whether Charron acted with malice under the facts of this case.   None of the necessary conditions were present for the Bankruptcy Court to extrapolate malice.

-10-

Finally, Appellee's statement that if the bankruptcy court had taken testimony on Charron's state of mind, it would have been an impermissible collateral attack on the state court judgment, is erroneous. The Bankruptcy Court has the exclusive jurisdiction to determine dischargeability under 523(a)(6).  If an injury had been proven by Morris, the Bankruptcy Court would need to determine Charron's state of mind and whether he acted with malice in harming Morris.[6] The debt in this case did not result from an injury and consequently, there is no need to investigate Charron's state of mind.

## <u>CONCLUSION</u>

It was improper for the Bankruptcy Court to determine Charron had acted maliciously to cause injury to Morris or his property, when the state courts said he had not acted to injure Morris at all.  At a minimum,  Charron's objectively supported belief about the propriety of the MSG asset sale weighs against any finding that Charron acted with malice and creates a triable issue of fact. This case should be reversed and dismissed by granting Charron's motion for summary judgment. A full dismissal is warranted because Morris cannot prove the necessary element under 523(a)(6) that the debt resulted from injury to plaintiffs or their property.

---

[6]The standard for malice requires that the creditor prove the debtor acted with conscious disregard of his duties or without just cause or excuse.  In this case, Charron believed his firm had the right as a secured creditor to conduct an Article 9 sale of the assets of MSG.  Even if his view of the law was contrary to what the state court ultimately determined, the focus is on his state of mind and whether he participated in the Article 9 sale knowing that the sale violated the restraining order against MSG and Schnoor.

Respectfully submitted,

Dated: April 6, 2016                    DUNN, SCHOUTEN & SNOAP PC
                                        Attorneys for the Appellant David W. Charron

                                             /s/ Perry G. Pastula
                                        By: _____
                                             Perry G. Pastula (P35588)
                                        Business address:

                                           2745 DeHoop Ave SW
                                           Grand Rapids, MI   49509
                                           (616) 538-6380

## ADDENDUM A

## STATUTES AND RULES

### Federal Statutes

**11 U.S.C. 523(a)(6) and (7):**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

### Michigan Statutes

**MCL §600.1721        Payment of damages; effect.**

If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

History: 1961, Act 236, Eff. Jan. 1, 1963

### Federal Court Rules

**F R Civ P Rule 65(d):**

(d) Contents and Scope of Every Injunction and Restraining Order.

(1) Contents. Every order granting an injunction and every restraining order must:
(A) state the reasons why it issued;
(B) state its terms specifically; and
(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

(2) Persons Bound. The order binds only the following who receive actual notice of it by personal

-A-

service or otherwise:
(A) the parties;
(B) the parties' officers, agents, servants, employees, and attorneys; and
(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

### Michigan Court Rules

**MCR 3.310(C):**

"(C) Form and Scope of Injunction. An order granting an injunction or restraining order
(1) must set forth the reasons for its issuance;
(2) must be specific in terms;
(3) must describe in reasonable detail, and not by reference to the complaint or other document, the acts restrained; and
(4) is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

-B-

# ADDENDUM B

## SIGNIFICANT CASES

1.    *In re Bradley Estate*,
         494 Mich. 367,  835 NW 2d 545 (2013)

2.    *Davis v. Detroit Financial Review Board*
         296 Mich. App. 568, 821 N.W.2d 896 (2012)

3.    *Musilli v. Droomers* (*In re Musilli*)
         379 Fed. Appx.. 494 (6th Cir. 2010)

4.    *In re Suarez*
         400 B. R. 732 (B.A.P. 9th Cir. 2009)

-C-