UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID W. CHARRON,　　　　　　　)
　　　　　　　　Appellant,　　　　)
　　　　　　　　　　　　　　　　)　　　No. 1:15-cv-1273
-v-　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　　Honorable Paul L. Maloney
GLENN S. MORRIS,　　　　　　　 )
　　　　　　　　Appellee.　　　　)
_____)

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

David Charron filed for bankruptcy. Among the debts he sought to discharge, Charron identified the approximately $350,000 he owed Glenn Morris. The money represented the costs and fees awarded to Morris in a contempt hearing against Charron. Morris contested whether the debt was dischargeable and an adversary proceeding was initiated. *See Glenn S. Morris and the Glenn S. Morris Trust v. David W. Charron (In re David W. Charron)*, Adversary Proceeding No. 15-80086 (Bankr. W.D. Mich. 2015) ("AP"). The parties filed cross motions for summary judgment. The bankruptcy court applied collateral estoppel, finding that all of the facts Morris needed to prove to establish that the debt was not dischargeable had been litigated and resolved in the state court proceedings. The bankruptcy court granted Morris's motion and denied Charron's motion. Charron filed this appeal.

For this appeal, the Court must resolve two questions. First, can a civil contempt award be non-dischargeable in a Chapter 7 bankruptcy as a willful and malicious injury? Second, were the facts establishing that the civil contempt award constituted a willful and

malicious injury, as defined the bankruptcy code, actually litigated and necessarily determined by the state court?  Because this Court answers both questions affirmatively, the bankruptcy court's decision will be affirmed.

## I.

This Court reviews the decision issued by the bankruptcy court using the *de novo* standard.  The decision to grant summary judgment is a question of law, and questions of law are reviewed without deference to the deciding court.  *In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001); *In re Markowitz*, 190 F.3d 455, 463 (6th Cir. 1999).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (c); *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  When resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial.  *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249).

For this appeal, the parties cannot relitigate the factual findings made the contempt hearing and later affirmed on appeal.  Either the state court made relevant findings of fact for the purpose of collateral estoppel, or it did not.  In either case, there will be no genuine issues of material fact.  Neither can the parties relitigate the legal conclusions reached by the

state courts.  In this appeal of the bankruptcy court's decision, the Court considers only what the state courts decided what the law was, and not whether the state courts correctly interpreted Michigan law.

## II.

The following discussion is provided for context.  Glenn Morris and Robert Schnoor were two owners of an insurance agency, Morris, Schnoor and Gemel, Inc. (MSG).  The two had a falling out and, in 2007, Morris filed a lawsuit against Schnoor and MSG, seeking to dissolve the agency.  The lawsuit (2007 Lawsuit) was filed in the Kent County Circuit Court.[1] MSG was represented by the law firm of Charron & Hanisch (C&H).  Enforcing a shareholder agreement, the court entered an order requiring Morris to sell his shares of MSG stock to Schnoor.  Schnoor made an initial down payment, and Morris was given a secured interest in the MSG stock.  Schnoor made several monthly payments, but soon missed payments because he had lost customers and did not have the income.  Morris initiated a contempt proceeding against Schnoor in the lawsuit.  During that contempt proceeding on August 20, 2008, counsel for Morris asked the court for an order that precluded Schnoor from "engaging in any out of the ordinary business activity, and no transfers of business interests, or activity, or assets in the meantime."  (AP ECF No. 13-20 Hrg. Trans. at 106.)  When asked by the court, Schnoor's attorney, David Charron, had no objection to maintaining the status quo "for a week or two."  (*Id.*)

---

[1]     *Morris v. Schnoor*, No. 07-6441 (Mich. 17th Cir. Ct.)

On August 22, 2008, the court issued an order directing Schnoor and MSG to produce certain financial documents.  The order also memorialized the discussion at the hearing.  As part of the order, the court prohibited Schnoor from transferring "assets of Morris, Schnoor & Gremel, Inc., outside of the ordinary course of business without authorization from the Court." (ECF No. 2–7 August 2008 Order PageID.527.)  While the order was in place, Charron and C&H took actions that facilitated the transfer of assets from MSG to New York Private Insurance Agency (NYPIA).

In February 2009, Morris sued Charron, C&H, MSG and NYPIA.[2]  The lawsuit (2009 Lawsuit) was filed in the Kent County Circuit Court.  On October 22, 2009, the court granted Charron's motion for summary disposition and dismissed the claims brought against him personally.  (ECF No. 2-3 PageID.236-47.)

On May 19, 2011, in the 2007 Lawsuit, the court issued an order to show cause why Schnoor, MSG, C&H, NYPIA and Charron should not be held in civil contempt for violating the August 2008 order.  (ECF No. 2-2 Contempt Opinion at 1 PageID.115.)  A trial on the contempt charge was held.  On December 27, 2012, the court issued an opinion finding MSG, C&H and Charron in contempt and awarding damages to Morris. (ECF No. 2–2 Contempt Opinion PageID.115–35.)  Against Charron, the court awarded Morris "the attorney fees and costs [Morris] incurred in the contempt trial that took place in 2011." (*Id.* at 16 PageID.130.)  The court subsequently denied a motion for reconsideration and a motion for a new trial.  The court then held a five-day evidentiary hearing to determine the

---

[2]      *Morris v. Morris, Schnoor & Gemel, Inc.*, No. 09-1878 (Mich. 17th Cir. Ct.)

fee award, and issued an opinion on January 28, 2014, awarding Morris $349,416 in fees and another $14,09.77 in costs.[3]  (ECF No. 2-2 Award Opinion PageID.137–47.)  On May 29, 2014, the Michigan Court of Appeals upheld the decision finding Charron in contempt of the 2008 order.  (ECF No. 2-4 CoA Opinion PageID.310–68.)

Charron filed for Chapter 7 bankruptcy on December 31, 2014, and listed the award on his schedule of unsecured debts to be discharged.[4]  *In re Charron*, No. 14-7970 (Bankr. W.D. Mich.)  Morris filed his complaint objecting to discharge on April 10, 2015, which was used to open the Adversary Proceeding.  Judge Boyd held a hearing on the cross motions for summary judgment and, on September 30, 2015, issued his opinion (ECF No. 2-2 MSJ Opinion PageID.59-84) and order (ECF No. 2-2 PageID.57-58) granting Morris's motion and denying Charron's motion.  On November 28, 2016, Judge Boyd issued an opinion (ECF No. 2-2 PageID.39-49) denying Charron's Rule 52 Motion to Amend Findings, Rule 59 Motion to Amend Judgment, and Rule 60 Motion for Reconsideration.  Judge Boyd issued one order denying the Rule 52 and Rule 59 motions (ECF No. 2-2 PageID.37) and a separate order denying the Rule 60 motion for reconsideration (ECF No. 2-2 PageID.38.)  Charron appealed these five opinions and orders.

---

[3]     In the final judgment, the amount was reduced to $363,506.77 because of an offsetting award of attorneys' fees and costs against Morris and in favor of Charron in the 2009 Lawsuit.  (ECF No. 2-3 Final Judgment PageID.190.)

[4]     The award is listed as an unsecured debt on Schedule F of Docket Entry 13.

III.

Can a civil contempt award be non-dischargeable in a Chapter 7 bankruptcy as a willful and malicious injury?   Resolving this question requires the Court to examine the § 523(a)(6) of the bankruptcy code.

By filing for bankruptcy, Charron sought the protection of the bankruptcy court from his creditors.  When a debtor files for bankruptcy under Chapter 7, a trustee liquidates the debtor's nonexempt assets and then distributes those proceeds to creditors.  *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007).  Under the bankruptcy code, 11 U.S.C. § 727(b), "discharge under Chapter 7 relieves a debtor of all debts incurred prior to the filing of a petition for bankruptcy, except those nineteen categories of debts specifically enumerated in 11 U.S.C. § 523(a)."  *Rittenhouse v. Eisen*, 404 F.3d 395, 396 (6th Cir. 2005).

In the bankruptcy proceeding, Morris had the burden to show that the debt owed to him by Charron was not dischargeable.  To avoid discharge, creditors must file a complaint objecting to the discharge of a debt, which initiates an adversary proceeding in the bankruptcy court.  *See* Fed. R. Bankr. P. 4004(c) and 7001(6); *In re Storozhenko*, 459 B.R. 693, 695-96 (E.D. Mich. 2011).  The creditor who seeks to avoid the discharge of a debt under § 523(a)(6) bears the burden of proof.  *In re Brown*, 489 F. App'x 890, 895 (6th Cir. 2012) (citing *Grogan v. Garner*, 489 U.S. 279, 286 (1991)); *In re Chapman*, 228 B.R. 899, 906 (N.D. Ohio 1998).

Section 523(a)(6) provides that debts for "willful and malicious injury by the debtor to another entity or to the property of another entity" are not dischargeable.  *Kawaauhau v. Geiger*, 523 U.S. 57, 59 (1998) (quoting 11 U.S.C. § 523(a)(6)); *In re Markowitz*, 190 F.3d at 458.  The Sixth Circuit has interpreted *Kawaauhau* as requiring the creditor to show the

debtor willed or desired harm or the debtor believed that injury was substantially certain to occur as the result of his or her behavior. *In re Mussilli*, 379 F. App'x 494, 498 (6th Cir. 2010) (quoting *In re Markowitz*, 190 F.3d at 465 n.10); *Sanderson Farms, Inc. v. Gasbarro*, 299 F. App'x 499, 504 (6th Cir. 2008) (quoting *In re Markowitz*). The injury element means a legal injury, a violation of the creditor's legal right, and not merely harm to the person. *In re Best*, 109 F. App'x 1, 5 (6th Cir. 2004). The "willful and malicious" standard is "stringent" and debts arising from reckless conduct and negligence do not fall within the statutory exception. *In re Best*, 109 F. App'x at 4.

To fall within the exception, the injury must be both willful and malicious; "[t]he absence of one makes the debt dischargeable." *In re Markowitz*, 190 F.3d at 463. The United States Supreme Court has held that the willful injury requirement means that the injury must be deliberate or intentional, not just the act. *Kawaauhau*, 523 U.S. at 61 ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely an intentional or deliberate *act* that leads to injury."). Since *Kawaauhau*, the Sixth Circuit explained "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,'" "he had not committed a 'willful and malicious injury' as defined by § 523(a)(6). *In re Markowitz*, 190 F.3d at 464; *see In re Kennedy*, 249 F.3d 576, 580 (6th Cir. 2001) (discussing *Kawaauhau* and *Markowitz*).

The malicious injury requirement means the injury must have occurred without just cause. In the Sixth Circuit, several courts have discussed the meaning of the word "malicious" within § 523(a)(6), each citing to *Tinker v. Colwell*, 193 U.S. 473 (1904).

"'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citing *Tinker*, 193 U.S. at 486); *see In re Baiardi*, 493 B.R. 497, 502 (E.D. Mich. 2013) ("'Malicious' means 'done intentionally, without just cause or excuse.'") (quoting *Tinker*).  In *In re Adams*, 147 B.R. 407, 417 (W.D. Mich. 1992), the court acknowledged that *Tinker's* discussion of malice has been questioned because of subsequent legislative history, but nevertheless applied the *Tinker* standard because the Sixth Circuit's reliance on it in *Wheeler* made the standard binding.

Finally, the focus of § 523(a)(6) is the nature of the debtor's conduct, which has been redressed by the underlying judgment.  *In re Abbo*, 168 F.3d 930, 931 (6th Cir. 1999.)  The language of the statutory exception "'does not distinguish between debts which are compensatory in nature and those which are punitive.'"  *Id.* (quoting *In re Miera*, 926 F.2d 741, 745 (8th Cir. 1991)).  Multiple subsections of § 523(a) except from discharge those liabilities that are a "debt for," which the Supreme Court interpreted to mean "debt as a result of," "debt with respect to," and "debt by reason of."  *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998).  Accordingly, debt acquired "as the result of" or "by reason of" willful and malicious behavior may not be dischargeable.

The Sixth Circuit has held that fines and damages awarded as the result of criminal contempt were not dischargeable under § 523(a)(6).  *In re Musilli*, 379 F. App'x at 499.  The court noted that "[o]ther courts uniformly have held that a contempt penalty constitutes a nondischargeable willful-and-malicious injury under § 523(a)(6)."  *Id.* at 499 (collecting cases); *see In re Nichdemus*, 497 B.R. 852, 859-60 (B.A.P. 6th Cir. 2013) ("Most cases

dealing specifically with the dischargeability of contempt judgments have been decided instead under § 523(a)(6), and have uniformly held that such judgments may constitute nondischargeable debt." (collecting cases); *accord In re Tacason,* 537 B.R. 41, 52-53 (B.A.P. 1st Cir. 2015) ("Court have often held that a violation of a court order resulting in an order of contempt satisfies the willful and malicious requirement of § 523(a)(6).") (collecting cases). In *Musilli*, the court acknowledged that it had not decided whether a debt arising from a contempt award is willful and malicious *per se. Id.* at 498. But, in analogous situations, where willful conduct included a knowing violation of the law and a court order, the court upheld the conclusion that the debt arising from the willful conduct was not dischargeable under § 523(a)(6). *Id.* at 498-99. The court found that reasoning persuasive because the debt arose from the same conduct that also resulted in a contempt finding. *Id.* at 499.

The great weight of authority establishes that a contempt award may be nondischargeable under § 523(a)(6) when the debt is the result of a malicious and willful injury to the creditor or the creditor's property.

## IV.

Before addressing the second question, the Court must summarize Michigan's contempt law and review the factual findings made in the state court proceedings.

## A.

Michigan law identifies three types of sanctions for contempt. A court may remedy contemptuous behavior through (1) criminal punishment to vindicate the court's authority, (2) coercion to force compliance with a court's order, and (3) compensatory relief for the complainant. *In re Contempt of Dougherty*, 413 N.W.2d 392, 398 (Mich. 1987); *In re*

*Contempt of United Stationers Supply Co.*, 608 N.W.2d 105, 107 (Mich. Ct. App. 2000). When a court uses its contempt power to reimburse the complainant for costs incurred by the contemptuous behavior, including attorney fees, the proceedings are civil in nature. *Porter v. Porter*, 776 N.W.2d 377, 381 (Mich. Ct. App. 2009). For civil contempt, "a finding of willful disobedience of a court order is not necessary." *In re Contempt of United Stationers Supply Co.*, 608 N.W. at 108. By statute, Michigan courts have the power to punish, by fine or imprisonment, "persons guilty of any neglect or violation of duty or misconduct" for enumerated situations, including "parties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court." Mich. Comp. Laws § 600.1701(g); *In re Bradley Estate*, 835 N.W.2d 545, 551 (Mich. 2013) (referring to § 600.1701 as the "general contempt statute").

## B.

On December 27, 2012, in the 2007 Lawsuit, Judge Yates issued the civil contempt opinion and order. (ECF No. 2-2 Contempt Opinion PageID.115-135.) Judge Yates set forth both factual findings and conclusions of law. The court had issued an order prohibiting Schnoor from transferring the assets of MSG without court permission. (*Id.* at 4 PageID.118.) The parties, including Charron as Schnoor's attorney, were aware of the order. (*Id.* and n.2.) While the order was in effect, Charron and Schnoor "embarked upon an effort to transfer the assets of MSG to a friendly buyer." (*Id.* at 4 PageID.118.) Using C&H as a middleman in its capacity as a secured creditor of MSG, C&H took possession of MSG's assets and sold the assets to NYPIA. (*Id.* at 6 PageID.120.) The asset transfer occurred

while the court's order was in place.  (*Id.*)  Charron was "acutely aware that the sale of the MSG's assets violated the court order[.]"  (*Id.*)

Judge Yates noted that injunctive orders, like his order prohibiting the transfer of MSG's assets, "binds parties and their attorneys alike."  (*Id.* at 15 PageID.129.)  Charron's actions "did precisely what the court order forbade" and constituted a "textbook example of contempt of court."  (*Id.*)  Emails established that Charron "knowingly took part in activities that violated the injunctive order[.]"  (*Id.* at 17 PageID.125.)  Judge Yates found that Charron recognized the impropriety of his conduct.  (*Id.* at 16 PageID.130.)  Judge Yates held that "by clear and convincing evidence, ... Attorney Charron acted in contempt of the court order entered on August 22, 2008."  (*Id.* at 16 PageID.130.)

Judge Yates carefully fashioned the award rendered in the contempt hearing.  He clarified that the contempt proceeding was a civil action and he was considering only those sanctions that did not involve the potential for incarceration.  (Contempt Opinion at 9-10 PageID.123-24.)  Judge Yates held that the "appropriate sanction" for Charron's civil contempt was "'a compensatory award of attorney fees, other costs, or both' that Plaintiff Glenn Morris incurred in pursuing civil contempt against Attorney Charron."  (*Id.* at 16 PageID.130 (citation omitted)).  Judge Yates then ordered Charron to compensate Morris "for the attorney fees and costs he incurred in the contempt trial that took place in 2011." (*Id.*)

The Michigan Court of Appeals affirmed the findings of facts and conclusions of law. Charron was aware of the "injunctive proscriptions" of the trial court's written order.  (ECF No. 2-4 CoA Opinion at 8 PageID.317.)  As Schnoor's attorney, Charron was bound by the

injunctive proscription in the order.  (*Id.* at 9 PageID.318.)  Charron understood the need to secure court approval before any action could be taken to transfer MSG's assets.  (*Id.*)  Nevertheless, Charron actively participated in the search for a buyer for the assets.  (*Id.*)  The Court of Appeals held that the contempt levied against Charron was civil in nature, not criminal.  (*Id.* at 15 PageID.324.)

## V.

With this background, the Court can address the second question posed at the outset of this opinion.  Were the facts establishing that the civil contempt award constituted a willful and malicious injury, as defined the bankruptcy code, actually litigated and necessarily determined by the state court?

## A.

"The doctrine of collateral estoppel 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause or action."  *In re Markowitz*, 190 F.3d at 461 (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).  Collateral estoppel is required by the Full Faith and Credit statute. *See* 28 U.S.C. § 1738; *In re Bursack*, 65 F.3d 51, 53 (6th Cir. 1995).  And, the doctrine applies to dischargeability actions brought under § 523(a).  *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge proceedings pursuant to § 523(a)."); *In re Bursack*, 65 F.3d at 53 (citing *Grogan*).

Federal courts must give a judgment issued in state courts the same preclusive effect that would be given the judgment under the law of the State where the judgment was

rendered. *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984). "Under Michigan law, collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was actually litigated and necessarily determined." *In re Markowitz*, 190 F.3d at 461–62 (citing *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990)). "[A] finding on which the judgment did not depend cannot support collateral estoppel." *Bd. of Cty. Road Comm'rs for Cty. of Eaton v. Schultz*, 521 N.W.2d 847, 850 (Mich. Ct. App. 1994); *see In re Trost*, 545 B.R. 193, 206 (W.D. Mich. 2016) (Gregg, B.J.); *see, e.g., Santana-Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005).

### B.

The bankruptcy court applied Michigan's collateral estoppel principles and precluded Charron from relitigating the findings of fact made by the state courts. Applying those facts to § 523(a)(6), Judge Boyd concluded that the Charron's debt to Morris was a willful and malicious injury to Morris or Morris's property and, therefore, the debt was not dischargeable. This Court agrees.

Judge Boyd was correct in holding that the first two elements for collateral estoppel were present. (MSJ Opinion PageID.75-76.) The 2007 Lawsuit in which the civil contempt award was made was a prior action between the same parties. And, there was a valid and final judgment in the prior proceeding.

### 1.

Judge Boyd found that the relevant facts, those supporting the non-dischargeability of the debt, were actually litigated (MSJ Opinion PageID.76) and necessarily determined (*Id.*

PageID.76–79).  Facts have been "actually litigated" in a prior proceeding when the question was "put into issue by the pleadings, submitted to the trier of fact for a determination, and determined by the trier."  *Rental Props. Owners Ass'n of Kent Cty. v. Kent Cty. Treasurer*, 866 N.W.2d 817, 835 (Mich. Ct. App. 2014) (citing *VanDeventer v. Michigan Nat'l Bank*, 432 N.W.2d 338, 341 (Mich. Ct. App. 1988)).  A fact has been "'necessarily determined' only if it is 'essential' to the judgment" rendered in the prior action.  *Gates*, 452 N.W.2d at 631.

2.

Judge Boyd found that the state courts actually litigated and necessarily determined that Charron's conduct, the violation of the state court's injunction, was willful and malicious. (MSJ Opinion PageID.80–81.)  This legal conclusion is supported by the opinions issued in the state courts, which are summarized above.  The state trial court set forth facts supporting the conclusion that Charron's contemptuous conduct was willful.  Charron had knowledge of the injunctive order and he intended to violate it.  The state court of appeals affirmed these factual conclusions.  (CoA Opinion at 7–9 PageID.316–18.)  The state courts also set forth facts supporting the conclusion that Charron's conduct was malicious.  The state trial court and the court of appeals both identified facts in the record establishing that Charron understood that his actions violated the injunction because he understood the necessity for court approval for the transfer of the assets.  (*Id.* 9–10 PageID.318–19.)  Those facts demonstrate a lack of cause for Charron's conduct.

This Court needs to address several arguments advanced in Charron's brief.  First, Charron's argument that willfulness was not necessarily determined is not persuasive.

Charron is correct that, under Michigan law, willfulness is not necessary to find a party in civil contempt.  Charron is also correct that both the state trial court and the court of appeals included this statement of law in their opinions.  But, stating the law correctly does not mean that either court *applied* that statement of law to the facts.  Both the state trial court and the state court of appeals described Charron's knowledge of the injunction and intentional conduct in thorough detail.  Accordingly, willfulness was actually litigated and actually determined in the state courts.  Furthermore, the state courts did not identify facts that would have allowed them to find contempt for conduct that was less than willful.  Accordingly, willfulness was necessarily determined.

Where contempt can be established by more than one standard under state law, a factual finding in the state courts meeting the federal standard will support collateral estoppel for bankruptcy purposes.  *See In re Grenier*, 458 F. App'x 436 439 (6th Cir. 2012); *In re Livingston*, 372 F. App'x 613, 619–20 (6th Cir. 2010).  Both *Grenier* and *Livingston* involved fraud claims that the debtors sought to discharge in bankruptcy.  In both cases, the federal courts concluded that the debtors were collaterally estopped from relitigating certain facts and then found that the debts were not dischargeable.  In *Grenier*, the debtor correctly noted that the standard for nondischargeability of the fraud debt was gross recklessness, while the Michigan standard for finding fraud was only recklessness.  The Greniers argued that the state court fraud judgment could be based on facts that would not support nondischargeability.  The court rejected the Greniers' argument, pointing to the specific factual finding by the state courts that the Greniers had actual knowledge of the facts they misrepresented.  Thus, "collateral estoppel may apply even if the Bankruptcy Code's gross-

recklessness standard is higher than its counterpart in Michigan common law fraud." *Grenier*, 458 F. App'x at 439.  In *Livingston*, the state court also made repeated statements establishing that the debtors had actual knowledge of their misrepresentations.  On those findings, the federal court held that it did not need to determine, as a matter of law, whether the state elements of fraud were identical to the federal gross recklessness standard for nondischargeability.  The facts that supported a finding of gross recklessness for bankruptcy purposes were actually litigated and necessarily determined by the state courts.  *Livingston*, 372 F. App'x at 619–20.

In his initial brief, Charron quotes a single sentence from section II(F) of the Michigan Court of Appeal's opinion (PageID.326), where the court states that Charron's subjective view of his behavior was irrelevant because a finding willfulness was not necessary for civil contempt.  (ECF No. 4 Appellant Br. at 28 PageID.891.)  The court of appeals begins by explaining that "it is clear" from the trial court's contempt opinion that the basis for the contempt finding was Charron's knowledge of the injunction.  (CoA Opinion PageID.325.)  The two sentences immediately preceding the quoted excerpt provides context for the statement quoted by Charron in his brief.  According to the court of appeals, the trial court's reference to an email was "merely an observation that Charron did not view his behavior as having been in violation of the order."  (*Id.* PageID.326.)  The court of appeals then states that Charron's subjective view of his behavior is irrelevant because he could be found in civil contempt even with that subjective view.  In the proper context, the quoted statement does not support the conclusion that the court of appeals held that Charron was held in contempt

for something less than a willful violation of the injunction.  The court of appeals makes clear that the trial court held Charron in contempt for a willful violation of the injunction.

Second, Charron asserts that the bankruptcy court engaged in improper fact finding. Charron is mistaken.  The factual disputes were litigated in the state courts.  The bankruptcy court identified how those disputes were resolved by the state trial court and the state court of appeals.  Because those factual disputes were actually litigated and necessarily determined, collateral estoppel applies.  Charron did not persuade the bankruptcy court, and has not persuaded this Court, that the factual findings in state court can be interpreted multiple ways to create a factual dispute in federal court.  Either the state court made a factual finding or it did not.

Third, Charron asserts that the fee award does not represent indemnification damages under § 600.1721 of Michigan's Compiled Laws, which authorizes awards for tort-like liability.  Charron contends that the fees and costs were awarded under the state court's inherent power.  A version of this argument was already presented to and rejected by the Michigan Court of Appeals.  *See Morris v. Schnoor*, No. 321925, 2016 WL 4262387, at *6–*8 (Mich. Ct. App. Aug. 11, 2016) (*CoA August 2016 Opinion*).  The court of appeals explained that Charron was "obfuscat[ing] the issue by arguing a distinction between statutory indemnification under MCL 600.1721 and sanctions for contempt." *Id.* at *6.  The court of appeals then explained that the award under § 600.1721 encompasses a loss suffered by the contemptor's misconduct, and that the loss includes the prosecution of the contempt.  *Id.* (quoting *Taylor v. Currie*, 743 N.W.2d 571, 581 (Mich. Ct. App. 2007)).  Charron's

argument is an improper appeal.  To agree with Charron, this Court would have to conclude that the Michigan Court of Appeals's interpretation of Michigan law was wrong.

Finally, Charron contends that his error in legal judgment does not constitute malice. Charron's explanation of this argument precisely captures why the argument must fail. Charron insists that he "held a different legal opinion than the tribunal about the propriety of his conduct."  (ECF No. 4 Appellant Br. at 29 PageID.892.)   Charron's belief that his conduct did not violate the injunctive order was litigated in the state trial court.   His disagreement with the state trial court's decision was the subject of his appeal, and was resolved against him by the state court of appeals.  For the adversary proceeding and for this appeal, the question is whether the state trial court and the state court of appeals found that Charron acted maliciously.  They did.  Charron's disagreement with the outcome of that issue does not create a dispute of fact.  Charron is collaterally estopped from relitigating that issue.

3.

Judge Boyd also found that the injury question was actually litigated and necessarily determined.  (MSJ Opinion PageID.81–83.)  Judge Boyd's legal conclusion is supported by the opinions issued by the state courts, which are summarized above.  The state trial court identified the injury for which Charron must compensate Morris as "the attorney fees and costs [Morris] incurred in the contempt trial that took place in 2011."  (Contempt Opinion at 16 PageID.130.)

Charron asserts that the state trial court's conclusion in the 2009 Lawsuit that he was not liable for fraud precludes the conclusion that the transfer of funds injured Morris for the

purpose of the contempt award.  Charron's argument ignores the specific instruction of the state trial court, which awarded the fees and costs to Morris for the costs of the contempt hearing.  Charron made this same argument to the state court of appeals, where it was rejected.  The state court of appeals found the sanction was appropriate; it was not an abuse of authority and it was consistent with the purpose of civil contempt under Michigan law.  (CoA at 14–16 PageID.323–25.)  The award of costs and fees was both a compensatory remedy *and* an encouragement to comply with the court's order.  Elsewhere in the opinion, the court of appeals rejected Morris's argument that Charron should be have held liable for fraud.  Relevant here, the court of appeals explained that "harm incurred by the transfer is not attributable to the false and misleading representation, but rather to the violation of the injunctive order.  As such, the trial court's election to hold Charron in contempt of court adequately addresses the concerns of Morris and MSG properties and provide compensation."  (*Id.* at 45 PageID.354.)  Finally, in its August 2016 opinion, the court of appeals again addressed this argument.  The court explained that the injury to Morris was the violation of the court order, and the fee award was compensation for that injury.  *CoA August 2016 Opinion*, at \*3 (quoting *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 400 (3rd Cir. 1994)) ("[S]anctions imposed after a finding of civil contempt to remedy past noncompliance with a decree are not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed.").

Other courts have found that fees and costs awarded in a contempt hearing can be the injury for the purposes of § 523(a)(6).  The Ninth Circuit Bankruptcy Appellate Panel

held that a fee award for a violation of a court order may be nondischargeable in bankruptcy, even when no other underlying injury occurred. *See In re Suarez*, 400 B.R. 732, 740–41 (9th Cir. B.A.P. 2009). In *Suarez*, the current wife of Kevin Barrett secured a restraining order against Suarez, the ex-wife of Kevin. The current wife later filed a motion to hold Suarez in contempt of the restraining order. The current wife prevailed, and was awarded, under a California statute, fees and costs as the prevailing party. No other award was made. Suarez filed for bankruptcy. In an adversary proceeding brought by the current wife under § 523(a)(6), the bankruptcy court and then the BAP panel rejected Suarez's argument that the current wife suffered no "injury." The BAP panel explained that the focus of the statute is on the debtor's conduct; whether the debtor's willful and malicious conduct caused an injury. The court concluded that Suarez's contemptuous conduct was both willful and malicious. As a result, the current wife could either suffer in silence or pursue enforcement of the court's order. By pursuing the enforcement option, the current wife was certain to incur fees, which were awarded as compensation.

The Court finds the reasoning in *Suarez* persuasive and consistent with Michigan law. Following *Suarez*, the injury to Morris arose from Charron's contemptuous conduct. The state courts concluded that Charron knowingly and intentionally violated the injunction. Like the new wife in *Suarez*, Morris could either sit in silence or pursue enforcement of the court order. Unlike *Suarez*, the record in this case is not "sparse." *Suarez*, 400 B.R. at 734. Here, the state court records are replete with factual findings. The state courts held that the attorney fees and costs were a compensatory award designed to remedy Morris's injury, the costs of having to prosecute Charron's violation of the injunctive order.

VI.

The Bankruptcy Court concluded that facts litigated and decided in the state courts established the elements for the nondischargeability of Charron's debt to Morris.  Applying collateral estoppel, the Bankruptcy Court granted Morris's motion for summary judgment in the adversary proceeding, and denied Charron's motion for summary judgment.  This Court finds no legal error in the Bankruptcy Court's decision.  Generally, Charron's attempts at establishing a genuine issue of material fact precluding summary judgment are merely disguised attempts to relitigate the underlying factual findings and legal conclusions decided in the state courts.  And, that is precisely what collateral estoppel precludes.  Accordingly, the decision of the Bankruptcy Court is AFFIRMED.

**IT IS SO ORDERED.**

Date:  December 29, 2017                                    /s/ Paul L. Maloney
                                                           Paul L. Maloney
                                                           United States District Judge